# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>RICHARD CHARLES WLODARCZYK, III,<br><br>                       Debtor,<br>_____<br><br>STEPHEN CHEIKES; and THE STORYTELLERS GROUP, CO.,<br><br>                       Appellants,<br>v.<br>RICHARD WLODARCZYK,<br>                       Appellee. | Case No.: 3:19-cv-00062-H-MDD<br><br>**ORDER AFFIRMING BANKRUPTCY COURT** |

On January 9, 2019, Appellants Stephen Cheikes and the Storytellers Group, Co. (collectively, "Appellant") appealed the bankruptcy court's judgment in favor of Appellee/Debtor Richard Wlodarczyk. (Doc. No. 1.) Appellant filed his opening brief on April 9, 2019. (Doc. No. 10.) Appellee filed his response brief on May 5, 2019. (Doc. No. 12.) On May 20, 2019, Appellant filed his reply brief. (Doc. No. 14.) For the reasons below, the Court affirms the bankruptcy court.

# BACKGROUND

Cheikes is a non-practicing lawyer with a long history of involvement in cross-border motion picture finance, and the Storytellers Group is his closely-held Canadian corporation. (Doc. No. 12-3 at 13–14.) In October 2010, an individual named Shaman Bakshi introduced Cheikes to a financing opportunity involving the issuance of a Standby Letter of Credit ("SBLC"). (Doc. No. 10-1 at 168–69.) Bakshi introduced Cheikes to Wlodarczyk, who would serve as an intermediary to the transaction. (Id. at 171.) For the transaction, Cheikes would deposit €300,000 into an escrow account to be released to Sebastian Anthonysamy, who would use the money for the issuance of a €50,000,000 SBLC by HSBC in Singapore. (Id. at 170, 187.) The parties entered into an agreement, and Cheikes deposited €300,000 into the escrow account. (Id. at 313–14.) Once the SBLC was ready to be issued, Wlodarczyk told Cheikes to release the €300,000 to Anthonysamy, as was the plan. (Id. at 178.) Cheikes refused to disburse the funds until Wlodarczyk would sign a personal and corporate guarantee promising that Cheikes would not lose any of his €300,000 investment. (Id. at 172.) Wlodarczyk agreed to the condition and executed a guarantee stating:

> This letter will serve as a Personal and Corporate Guarantee for the 300,000 Euro issuance fee that you have deposited with Commercial Escrow Services, Inc. under Escrow# 39-6279-AH. Once these funds are released to the Provider, Mr. Sebastian Anthonysamy, we fully guarantee their performance or a refund, if performance is not completed. Their duty to perform, outlined by the fully executed SBLC Issuance Agreement, is to issue a $50,000,000 SBLC from HSBC UK, with the Lender, North American Conveyor Company, as the Beneficiary of the Instrument. If these duties are not performed, we Creative Financial Resources, LLC and myself Personally, Richard Charles Wlodarczyk III, due hereby guarantee the 300,000 Euros issuance fee that you are releasing to the Provider Mr. Sabastian Anthonysamy.

(Id. at 330.) Cheikes then authorized released of the money on March 1, 2011. (Id. at 321.)

Ultimately, Anthonysamy never obtained the SBLC from HSBC. (Doc. No. 7-9 at 13.) Per the parties' agreement, Cheikes requested that Anthonysamy refund the €300,000. (Doc. No. 10-1 at 326.) Anthonysamy did not refund the money, and Cheikes asked

Wlodarczyk to honor the guarantee and refund the money. (Id. at 183–84.) Wlodarczyk did not pay. (Id. at 163, 183–84.)

Accordingly, on March 15, 2013, Cheikes filed, amongst other complaints in other courts against other parties to the transaction, a complaint in Orange County Superior Court against Wlodarczyk for breach of contract, conversion, fraud, and negligence, Case No. 30-2013-00637770-CU-BC-CJC. (Id. at 7–16.) In that case, the parties entered into a settlement agreement and a stipulated judgment ("the Stipulated Judgment"). (Id. at 22–36.) Wlodarczyk defaulted on his settlement payments two months later, leading Cheikes to file an ex parte application asking the state court for a judgment pursuant to California Code of Civil Procedure § 664.6 ("CCP § 664.6"). (Id. at 44–47.) The state court, on December 3, 2014, entered judgment in favor of Cheikes and against all Wlodarczyk and his company, Creative Financial Resources, LLC, jointly and severally, in the amount of $200,000. (Id. at 49–50.)

Cheikes agreed to postpone enforcement of the Stipulated Judgment in exchange for Wlodarczyk paying $300,000 rather than $200,000. (Id. at 39–42.) Wlodarczyk paid Cheikes $17,500 between February 2015 and May 2016. (Doc. No. 7-3 at 29–38.) Cheikes then brought involuntary Chapter 8 bankruptcy petitions against Wlodarczyk and Creative Financial Resources. (Bankr. S.D. Cal. Nos. 16-06326-CL7; 16-06328-CL7.) Wlodarczyk represented to the bankruptcy court that he was paying his debts in the normal course, so the bankruptcy court dismissed the petitions. (Doc. No. 7-9 at 7.)

On March 22, 2017, Wlodarczyk filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Southern of District of California, Bankruptcy Case No. 17-01567-LA7, disclosing a $210,000 debt to Cheikes. (Id.) On June 16, 2017, Cheikes filed an adversary complaint for nondischargeability of Wlodarczyk's debt, Adversary Proceeding No. 17-90123-CL. (Doc. No. 10-1 at 55–67.) Cheikes filed a motion for partial summary judgment arguing that the Stipulated Judgment should be given issue preclusive effect and that Wlodarczyk's debt was not dischargeable as a matter of law pursuant to 11 U.S.C. § 523(a)(2)(A). (Id. at 108–37.) After consideration, the bankruptcy court denied the

motion, concluding that issue preclusion did not apply and factual disputes remained as to Appellant's § 523(a)(2)(A) claim. (Id. at 139–49.) The case proceeded to a bench trial, after which the bankruptcy court ordered judgment in favor of Appellee on December 8, 2018, reaffirming that issue preclusion does not apply and concluding that Appellant failed to prove the elements of his § 523(a)(2)(A) nondischargeability claim. (Doc. No. 7-9 at 3–26.)

## DISCUSSION

### I. Legal Standard

A district court reviews a bankruptcy judge's decision by applying the same standard of review used by circuit courts when reviewing district court decisions. See In re Greene, 583 F.3d 614, 618 (9th Cir. 2009); In re Baroff, 105 F.3d 439, 441 (9th Cir. 1997). "The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." In re JTS Corp., 617 F.3d 1102, 1109 (9th Cir. 2010) (quotation marks omitted). The district court must accept the bankruptcy court's factual findings "unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." In re Straightline Investments, Inc., 525 F.3d 870, 876 (9th Cir. 2008). "Mixed questions of law and fact are reviewed de novo." In re JTS, 617 F.3d at 1109. A mixed question of law and fact occurs when the facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. See In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997). When sitting as an appellate court in bankruptcy, the district court need not adopt the bankruptcy court's rationale and may affirm on any basis supported by the record. See In re Frontier Properties, Inc., 979 F.2d 1358, 1364 (9th Cir. 1992).

### II. Analysis

Appellant argues that the bankruptcy court erred in finding that the state court Stipulated Judgment did not have issue preclusive effect as to his 11 U.S.C. § 523(a)(2)(A) nondischargeability claim. (Doc. No. 10 at 17–22.) Appellant also argues that the bankruptcy court erred in concluding that he did not prove the elements of his

4

§ 523(a)(2)(A) claim. (Id. at 22–32.) After thorough review of the record and in consideration of the parties' arguments, the Court concludes that the bankruptcy court should be affirmed on both issues.

### A. Issue Preclusion

Appellant argues that the bankruptcy court erred in concluding that the parties' state court Stipulated Judgment did not have issue preclusive effect with respect to the state law fraud claim and nondischargeability under § 523(a)(2)(A). (Doc. No. 10 at 17–22.) Because determining whether issue preclusion applies is a question of law, the Court reviews de novo the bankruptcy court's refusal to give a state court judgment preclusive effect. See Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 993 (9th Cir. 2001).

"Issue preclusion 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund, 754 F.3d 754, 760 (9th Cir. 2014) (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). A federal court applies the forum state's law of issue preclusion. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). California's test for issue preclusion has five threshold requirements:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Cook v. Harding, 879 F.3d 1035, 1041–42 (9th Cir. 2018) (quoting ReadyLink, 754 F.3d at 760–61). Further, "[a]pplication of issue preclusion must be consistent with the public policies of 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.'" In re Yaikian, 508 B.R. 175, 183 (Bankr. S.D. Cal. 2014) (citing Lucido v. Superior Court, 51 Cal. 3d 335, 341–43 (1990)). The party asserting preclusion has the burden of meeting

these requirements. In re Plyam, 530 B.R. 456, 462 (B.A.P. 9th Cir. 2015) (citing In re Harmon, 250 F.3d at 1245). The party must provide "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. . . . Ultimately, any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the issue preclusive effect." Id. (internal quotation marks, alterations, and citation omitted).

When Cheikes was not refunded his investment, he filed a complaint in Orange County Superior Court against Wlodarczyk for breach of contract, conversion, fraud, and negligence. (Doc. No. 10-1 at 7–16.) The parties then entered into a settlement agreement and the Stipulated Judgment. (Id. at 22–36.) On motion by Cheikes, the state court entered the Stipulated Judgment as a judgment pursuant to CCP § 664.6. (Id. at 49–50.) The only facts included in the Stipulated Judgment show that Appellee solicited Appellant to participate in financing the SBLC, Appellant placed €300,000 into the escrow account, Appellant's investment was improperly released from escrow, and Appellant filed the action to enforce the personal and corporate guarantees made by Appellee. (Id. at 22–23, 26.) The Stipulated Judgment states that it is a "compromise on the breach of contract (guarantee), conversion and fraud claims filed by Plaintiffs and it is expressly agreed by the Defendants that this Stipulated Judgment is not dischargeable pursuant to 11 U.S. Code § 523 should either of the Defendants file for bankruptcy protection under any section of Title 11 of the United States Codes." (Id. at 25–26.) Appellant argues that the Stipulated Judgment's resolution of the state court fraud claim has an issue preclusive effect with regards to his nondischargeability claim. (Doc. No. 10 at 17–22.) The bankruptcy court concluded that the Stipulated Judgment is not automatically given preclusive effect under CCP § 664.6 and Appellant failed to meet the California test for issue preclusion. (Doc. No. 12-1 at 501–02.) After review of the parties' arguments and the record, the Court agrees with the bankruptcy court's conclusion.

Appellant first argues that the Stipulated Judgment is given preclusive effect because it was entered by the state court pursuant to CCP § 664.6. (Doc. No. 10 at 17.) CCP § 664.6

states "If parties to pending litigation stipulated . . . for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." The Court agrees that a judgment under CCP § 664.6 may be entitled to an issue preclusive effect, however, such an effect is not automatic. A judgment entered under CCP § 664.6 must still meet the elements under California law in order for issue preclusion to apply. See Sturgeon-Garcia v. Cagno, 567 B.R. 364, 371 (N.D. Cal. 2017), aff'd, 740 F. App'x 144 (9th Cir. 2018). Additionally, the Stipulated Judgment does not automatically preclude dischargeability by way of its nondischargeability waiver because such prepetition waivers are unenforceable, which Appellant does not dispute. See In re Huang, 275 F.3d 1173, 1177 (9th Cir. 2002).

The Court therefore turns to whether the Stipulated Judgment meets the requirements for issue preclusion. In applying this test, stipulated judgments in California are generally not afforded issue preclusive effect. In re Yaikian, 508 B.R. at 179. "The reason is that these judgments are the product, not of litigation but of negotiation." Id. Here, Appellee does not dispute that the second, fourth, and fifth elements for issue preclusion are met. The first requirement for issue preclusion is met because the elements for fraud and § 523(a)(2)(A) are identical. See In re Younie, 211 B.R. 367, 374 (B.A.P. 9th Cir. 1997), aff'd, 163 F.3d 609 (9th Cir. 1998).

The third element, requiring that the issue be necessarily decided, is not met because Appellant has failed to show "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." In re Plyam, 530 B.R. at 462. The Stipulated Judgment references no facts in relation to the fraud claim. Even further, the Stipulated Judgment makes no express finding of fraud. Rather, the Stipulated Judgment's only reference to fraud is where it states that it is a "compromise on the breach of contract (guarantee), conversion and fraud claims." (Doc. No. 10-1 at 25–26.) The only facts included in the Stipulated Judgment merely show that Appellee owes Appellant a debt. (See id. at 22–23, 26.) Thus, as astutely noted by the bankruptcy court, Appellee would be issue precluded from arguing that he does not owe a debt to Appellant. That however is not

the issue here—the issue is whether the guarantee debt was procured by fraud. The Stipulated Judgment and state court record provided to the Court do not show that the issue of fraud was necessarily decided because the Stipulated Judgment lacks any substantive reference to the fraud claim or facts supporting a fraud claim.

"The role of the state court in entering the judgment on a stipulation is more circumscribed so that unless the state court record reflects that it considered evidence of the wrongdoing at issue, the substantive issues are neither actually nor necessary decided by the state court." In re Yaikian, 508 B.R. at 179; see In re Younie, 211 B.R. at 374 (issue of fraud was necessarily decided where the judgment contained factual findings related to the fraud counts of the complaint). "If the stipulation does no more than assess the amount of the judgment without any indication of the facts on which the judgment is based, then there is not a sufficient record on which to base collateral estoppel." In re Berr, 172 B.R. 299, 307 (B.A.P. 9th Cir. 1994) (citations omitted). Here, the Stipulated Judgment assesses the total amount of judgment for all claims combined and includes facts supporting the breach of contract claim, but provides no facts supporting judgment on the fraud claim. Because the state court record provided by Appellant does not reflect that the state court considered evidence of fraud, the issue was "neither actually nor necessarily decided by the state court." In re Yaikian, 508 B.R. at 179; see In re Huang, 275 F.3d at 1178. Thus, this presents doubt as to what was decided in the state court judgment, which should be resolved against allowing the issue preclusive effect. See In re Plyam, 530 B.R. at 462. Accordingly, the Court determines that the bankruptcy court properly concluded that the stipulated judgment does not have issue preclusive effect in this case.

**B.     11 U.S.C. § 523(a)(2)(A) Claim**

Next, Appellant argues that the bankruptcy court erred in concluding that he did not prove the elements for his 11 U.S.C § 523(a)(2)(A) nondischargeability claim. (Doc. No. 10 at 22–32.) The bankruptcy court came to this conclusion in its final judgment after hearing all of the evidence at trial. (Doc. No. 7-9 at 3–26.) "Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." In re

Tallant, 218 B.R. 58, 63 (B.A.P. 9th Cir. 1998) (citing Anastas v. American Sav. Bank (In re Anastas), 94 F.3d 1280, 1283 (9th Cir. 1996)).

Under the Bankruptcy Code, a debt "for money, property, services, or an extension, renewal, or refinancing of credit" is nondischargeable in bankruptcy to the extent that such a debt is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). In order to succeed on a claim of nondischargeability under § 523(a)(2)(A), a creditor must show: "(1) the debtor made . . . representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made." In re Sabban, 600 F.3d 1219, 1222 (9th Cir. 2010) (citation and internal alteration omitted). The creditor has the burden of proving the elements by a preponderance of the evidence. Id. The Ninth Circuit has held that this exception to dischargeability of debts in bankruptcy "should be construed strictly against creditors and in favor of debtors." Id. (quoting Klapp v. Landsman (In re Klapp), 706 F.2d 998, 999 (9th Cir. 1983)).

After review of the record and the parties' arguments, the Court concludes that the bankruptcy court did not err in concluding that Appellant failed to prove nondischargeability under § 523(a)(2)(A). The bankruptcy court issued a thorough opinion after hearing all evidence at trial, concluding that Appellant met none of the requisite elements. (Doc. No. 7-9 at 15–24.) On the first element, Appellant argues that Appellee made false representations by saying that he knew and had transacted with the parties to the deal, and that he had the financial ability and intent to pay the guarantee. (Doc. No. 10 at 23.) With respect to Appellant's argument that Appellee made representations by stating that he knew and had transacted with the parties to the deal, the bankruptcy court concluded that this contradicted Cheikes's own testimony that the only fraud was in executing the guarantee. (Doc. No. 7-9 at 16.) Further, the bankruptcy court credited Wlodarczyk's testimony in which he states that he did not recall saying those things. (Id.) The record

presents a factual dispute as to whether false representations were made by Appellee to induce the initial agreement. (See Doc. Nos. 7-9 at 10; 10 at 24; 12-1 at 497.) Wlodarczyk and Cheikes were the only witnesses at trial. (Doc. No. 10-1 at 8.) In sum, the bankruptcy court chose to believe Wlodarczyk's testimony instead of Cheikes's testimony. The Court concludes that the bankruptcy court's finding that Wlodarczyk did not make representations regarding past experience with the parties to the deal was logical, plausible, and supported by the record, and therefore not the result of clear error. See In re Straightline, 525 F.3d at 876; In re Snapir, No. 2:12-BK-50058-BR, 2017 WL 5022354, at *5 (B.A.P. 9th Cir. Nov. 3, 2017).

With respect to alleged misrepresentations regarding Appellee's ability to pay, the Court agrees with the bankruptcy court that Appellant failed to show any actionable representation or omission. Appellant does not identify actual representations of financial condition made by Appellee, but rather, argues that Appellee did not have the financial resources to pay the guarantee and his failure to disclose this constitutes fraud under § 523(a)(2)(A). (Doc. No. 10 at 25–26.) "A debtor's failure to disclose material facts constitutes a fraudulent omission under § 523(a)(2)(A) if the debtor was under a duty to disclose and the debtor's omission was motivated by an intent to deceive." In re Harmon, 250 F.3d at 1246 n.4 (citing Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1089–90 (9th Cir.1996)). As correctly noted by the bankruptcy court, a contract does not include an implicit representation of the debtor's ability to perform. See In re Eashai, 87 F.3d at 1090 (quoting Karelin v. Bank of America Nat'l Trust & Sav. Ass'n (In re Karelin), 109 B.R. 943 (9th Cir. BAP 1990); In re Sharma, No. ADV LA 11-01555 PC, 2013 WL 1987351, at *13 n.13 (B.A.P. 9th Cir. May 14, 2013), aff'd, 607 F. App'x 713 (9th Cir. 2015) (citing In re Karelin, 109 B.R. at 947). Therefore, the relevant inquiry is whether Appellee had a duty to disclose his financial condition. To determine whether a duty to disclose exists, courts look to the test for common law fraud found in the Restatement of Torts. See Field v. Mans, 516 U.S. 59, 71 (1995). "The Restatement in § 551(2) specifies that a party to a business transaction is under a duty to disclose to the

other party when the matters are known to him because of a fiduciary or other similar relation of trust and confidence between them." In re Del Valle, 577 B.R. 789, 802 (Bankr. C.D. Cal. 2017). Further, a party has a duty to disclose "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading[.]" In re Baljian, No. ADV 12-90166-CL, 2014 WL 1287127, at *7 (Bankr. S.D. Cal. Mar. 26, 2014) (quoting Restatement (Second) of Torts § 551(b)). The bankruptcy court here correctly concluded based on its factual findings, which are consistent with the record, that Appellee was under no duty to disclose his financial condition. (See Doc. No. 7-9 at 21-22.) Appellant was the one who initiated the guarantee and did not request that Appellee disclose his financial condition. (Id. at 21.) The only statement made by Appellee was that he intended to honor the guarantee, which was unambiguous and did not require any additional disclosures. (See Doc. No. 10-1 at 330.) Appellee and Appellant did not have any particular relation of trust and confidence because they had not previous transacted before and were only recently introduced through Bakshi. (Doc. No. 10-1 at 171.) The parties never even met face-to-face until trial. (Doc. No. 7-9 at 22.) Accordingly, the bankruptcy court made factual findings, which are supported by the record and not the result of clear error, that show that Appellee was under no duty to disclose his financial condition at the time of the guarantee.

Further, any nonwritten representations of a debtor's financial condition are not grounds for fraud-based nondischargeability under § 523(a)(2). In re Anastas, 94 F.3d 1280, 1285 (9th Cir. 1996) ("We emphasize that the representation made by the card holder in a credit card transaction is not that he has an ability to repay the debt; it is that he has an intention to repay. Indeed, section 523(a)(2) expressly prohibits using a non-written representation of a debtor's financial condition as a basis for fraud.") Appellant argues in his reply that Appellee made written representations regarding his financial condition in the guarantee. (Doc. No. 14 at 8.) However, the record shows that the guarantee itself does not include any representation of Appellee's financial condition. (See Doc. No. 10-1 at 330.) Additionally, in arguing that knowingly delivering a guarantee on which the debtor

cannot pay constitutes fraud, Appellant only cites to two bankruptcy cases that are over 20 years old and are not controlling. (Doc. No. 10 at 25.) See In re Rieder, 178 B.R. 373, 377 (Bankr. S.D.N.Y. 1995), aff'd sub nom. Fellows, Read & Assocs., Inc. v. Rieder, 194 B.R. 734 (S.D.N.Y. 1996), aff'd, 116 F.3d 465 (2d Cir. 1997); In re Ekrem, 192 B.R. 982, 993 (Bankr. C.D. Cal. 1996). Even under this limited case law Appellant's argument fails because he has failed to demonstrate that any alleged falsity was knowing. The bankruptcy court made a factual finding that there was no falsity and even assuming there was falsity, Appellee had no knowledge of it. (Doc. No. 7-9 at 20.) On review of the record, the Court concludes that such a factual finding is logical, plausible, and supported by the record. See In re Straightline, 525 F.3d at 876; In re Snapir, No. 2:12-BK-50058-BR, 2017 WL 5022354, at *5. Therefore, the Court agrees with the bankruptcy court that Appellee made no actionable representations regarding his ability to pay the guarantee.

Turning to alleged misrepresentations regarding Appellee's intent to pay, Appellant argues that Appellee made the guarantee without intent to perform, which constitutes fraud sufficient to support a § 523(a)(2)(A) claim. (Doc. No. 10 at 28–30.) "[A] promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." In re Barrack, 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998) (citing In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989)). The bankruptcy court concluded that Appellee intended to perform on the guarantee. (Doc. No. 7-9 at 20–22.) In doing so, the bankruptcy court made factual findings in support of such a conclusion, including that Appellant initiated the guarantee, not Appellee, and that Cheikes testified "that he still believes the deal was a legitimate one and could have succeeded had Anthonysamy performed as expected." (Id. at 21.) This indicates that Cheikes did not himself believe that Appellee entered the guarantee with any intent to deceive. The bankruptcy court also concluded that Appellee was motivated not by an intent to deceive, but rather by a desire to protect Appellant from loss and save the closely-impending transaction. (Id. at 22.) The Court defers to these factual findings because they are not the result of clear error, as they are logical, plausible, and supported by the record. See In re Straightline, 525 F.3d at 876; In

re Snapir, No. 2:12-BK-50058-BR, 2017 WL 5022354, at *5. These facts support the bankruptcy court's finding that Appellee had no present intent to deceive Appellant when he entered the guarantee and rather, Appellee had intent to perform on the guarantee. The Court therefore concludes that such a conclusion is not the result of clear error. See In re Straightline, 525 F.3d at 876. Thus, on the first element under § 523(a)(2)(A), the Court agrees with the bankruptcy court that Appellant failed to show by a preponderance of the evidence that Appellee made any actionable representation.

On the second element for § 523(a)(2)(A), the bankruptcy court concluded that there was no falsity with respect to Appellee's agreement to the guarantee and even assuming any falsity, there was no evidence that Appellee knew of such falsity. (Doc No. 7-9 at 20.) Appellant argues that this factual finding is the result of clear error. (Doc. No. 10 at 25–27.) Appellant argues that "a representation may be fraudulent, without knowledge of its falsity, if the person making it 'is conscious that he has merely a belief in its existence and recognizes that there is a chance more or less great, that the fact may not be as it is represented." (Doc. No. 14 at 9 (quoting In re Gertsch, 237 B.R. 160, 168 (B.A.P. 9th Cir. 1999)). After thorough review of the record, the Court concludes that the bankruptcy court's factual findings that there was no falsity or knowledge of falsity are not the result of clear error because such factual findings are logical, plausible, and supported by the record. See In re Straightline, 525 F.3d at 876; In re Snapir, No. 2:12-BK-50058-BR, 2017 WL 5022354, at *5. Further, the argument from Appellant's reply also fails because Appellant failed to demonstrate that Appellee made any representation or that any representation was false. Therefore, the Court concludes that the bankruptcy court properly decided that Appellant failed to demonstrate this element by a preponderance of the evidence.

With respect to the third element requiring intent to deceive, Appellant argues that the bankruptcy court clearly erred because its analysis focused on the initial transaction rather than the guarantee. (Doc. No. 14 at 9.) This however is not the case because the bankruptcy court expressly states that it concluded that Appellee "did not intend to deceive

13

[Appellant] by signing the guarantee." (Doc. No. 7-9 at 20.) The bankruptcy court's analysis of this element, like the other elements, is focused on the guarantee, and the bankruptcy court was careful to note when it was instead discussing the initial transaction. On review of the record, the Court concludes that the bankruptcy court's factual findings in support of its conclusion that Appellee had no intent to deceive with respect to agreeing to the guarantee are logical, plausible, and supported by the record. See In re Straightline, 525 F.3d at 876; In re Snapir, No. 2:12-BK-50058-BR, 2017 WL 5022354, at *5. Thus, the Court concludes that the bankruptcy court made no clear error in deciding that Appellant did not meet his burden of demonstrating intent to deceive by a preponderance of the evidence.[1] Accordingly, the Court concludes that the bankruptcy court properly concluded that Appellant failed to prove his § 523(a)(2)(A) nondischargeability claim.

## CONCLUSION

For the reasons above, the Court affirms the bankruptcy court's judgment in favor of Appellee/Debtor Richard Wlodarczyk. The Court directs the Clerk of Court to close the case.

**IT IS SO ORDERED.**

DATED: July 15, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[1] Because the Court agrees with the bankruptcy court that Appellant failed to demonstrate the first three elements of his § 523(a)(2)(A) claim, the Court need not address the remaining elements of reliance, causation, and damages. Nonetheless, after thorough review of the record, the Court is also inclined to conclude that the bankruptcy court properly concluded that the remaining elements were not met because its factual findings with respect to these elements are logical, plausible, and supported by the record. See In re Straightline, 525 F.3d at 876; In re Tallant, 218 B.R. at 63; In re Snapir, No. 2:12-BK-50058-BR, 2017 WL 5022354, at *5.